IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DONNA K. SKIPPER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:09cv1006-CSC |
| | ) (WO) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

The parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction**. Plaintiff Donna Skipper ("Skipper") was 51 years old at the time of the hearing before the ALJ. (R. 26-27). She has a high school education. (R. 28). Her past relevant work experience includes work as a "sewing machine operator." (R. 20).

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

Following the hearing, the ALJ concluded that the plaintiff has severe impairments of "degenerative disc disease of the lumbar spine with herniated disc at L4-L5 disc and inflammatory changes at the left facet joint at the L4-L5 level." (R. 17). The ALJ concluded that the plaintiff's "ulnar nerve dysfunction" was not severe. (*Id*.) The ALJ concluded that Skipper has the residual functional capacity to perform a "full range of light work," (*id*.), and that she could perform her past relevant work. (R. 20). Moreover, relying on the testimony of a vocational expert, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Skipper could perform. (*Id*.). Consequently, the ALJ concluded that she was not disabled. (*Id*.).

**B. The Plaintiff's Claims**. As stated by the plaintiff, the three issues for the Court's review are as follows.

1. The Commissioner's decision should be reversed, because the ALJ failed to accord adequate weight to the opinion of Ms. Skipper's treating physician.

2. The Commissioner's decision should be reversed, because the ALJ erred by failing to find Ms. Skipper's heel spur and diabetes as severe impairments.

3. The Commissioner's decision should be reversed, because the ALJ failed to find Ms. Skipper's testimony of subjective pain and limitations credible despite medical evidence that supports the testimony.

(Doc. # 12, Pl's Br. at 8-9).

### IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether

the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The court must scrutinize the record in its entirety to determine the reasonableness of the ALJ's decision. *See Walker,* 826 F.2d at 999. The ALJ must also conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The Commissioner's regulations require that a written decision contain several elements. The ALJ must state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based*.

42 U.S.C. § 405(b)(1) (emphasis added).

**A. Rejection of Treating Physician's opinion**. Skipper argues that the ALJ improperly rejected her treating physician's opinion about her abilities and her 'intractable' pain. In essence, the plaintiff argues that if the ALJ accepted Dr. Wessner's opinions about her pain, she would be disabled. On April 21, 2007, Dr. Wessner completed a physical capacities evaluation and a clinical assessment of pain. (R. 162-63). Dr. Wessner opined that Skipper had pain that was "intractable and virtually incapacitating," necessitating "bed

rest and/or medication." (R. 162). Dr. Wessner also indicated that the plaintiff could sit for 2 hours and walk or stand for 1 hour. (R. 163). She could rarely exert push/pull movements, do fine or gross manipulation, climb, bend or reach. (*Id.*). She could never work around hazard machinery but she could occasionally operate motor vehicles and work around dust, allergens or fumes. (*Id.*). According to Dr. Wessner, Skipper would miss more than four days per month from work due to her chronic low back and neck pain. (*Id.*)

Of course, the law in this circuit is well-settled that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-2; *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

However, there are limited circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's

6

opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Good cause may also exist where a doctor's opinions are merely conclusory; inconsistent with the doctor's medical records; or unsupported by objective medical evidence. *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr*, 816 F.2d at 581.

After reviewing all the medical records, the ALJ rejected the opinion of Dr. Wessner because his medical records do not support the pain and physical evaluation forms *"during the relevant period of disability considered herein."* (R. 20) (emphasis added). The ALJ's determination is supported by substantial evidence. Dr. Wessner's medical records do not support a conclusion that Skipper suffered from disabling pain prior to the expiration of her disability insured status. "Because [Skipper's] last insured date was December 31, [2003], her DIB appeal requires a showing of disability on or before that date." *Moore v. Barnhart* 405 F.3d 1208, 1211 (11th Cir. 2005). It is not sufficient that Skipper had diagnoses prior

7

to the expiration of her insured status in 2003.  Her conditions had to be disabling prior to December 31, 2003, the date her insured status expired.  "For DIB [disability insurance benefits] claims, a claimant is eligible for benefits where she demonstrates disability *on or before the last date* for which she was insured." *Moore*, 405 F.3d at 1211 (emphasis added). *See also Adamo v. Commissioner of Social Sec.*, 365 Fed. Appx. 209, 212 (11th Cir. 2010) ("A disability insurance claimant must prove that he was disabled on or before the last date for which he was insured.")

> The Social Security Act is also clear in requiring that disability be proven to exist during the time that the claimant is insured within the meaning of the special insured status requirements of the Act.  42 U.S.C. § 416(i)(3) and 423(c)(1), . . . If a claimant becomes disabled After (sic) he has lost insured status, his claim must be denied despite his disability.

*DeMandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).[4]

While it appears that Skipper's medical conditions may have deteriorated since 2003, Dr. Wessner's treatment notes simply do not support Skipper's contention that her conditions were severe enough in 2003 to deem her disabled.[5]  Based upon its review of the ALJ's

---

[4]  *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[5]  Skipper concedes that Dr. Wessner's treatment records are not within the applicable time period but argues that the records "should be considered because Ms. Skipper's symptoms noted stem from her diagnoses prior to 2003, the date last insured." (Doc. # 12, Pl's Br. at 10).  Even considering Dr. Wessner's medical records after 2003, the records do not support his opinion that Skipper suffered from unrelenting disabling pain.  Dr. Wessner began treating Skipper in 1998.  On December 31, 2001, Skipper complained to Dr. Wessner of sinus congestion and a 'flare up' of low back pain.  (R. 183).  On January 14, 2002, Skipper reported that her back pain had lessened.  She also had an appointment for an epidural on January 15, 2002.  (R. 182).  On January 23, 2002, Skipper reported that she had walked a mile; she felt well; and her back pain was "much better." (*Id*.)  Skipper saw Dr. Wessner on February 25, April 18, and May 9, 2002 but she did not complain about back pain on those visits.  (R. 181-80).  On September 1, 2002, Skipper told Dr. Wessner she had not exercised because she was lazy, and she did not complain about back pain.  (R.

decision and the objective medical evidence of record, the court concludes that the ALJ's rejection of Dr. Wessner's opinion that Skipper suffers from intractable disabling pain is supported by substantial evidence.

**B. Severe Impairments**. Next, Skipper argues that the ALJ erred when he failed to consider her diabetes a severe impairment.[6] According to Skipper, her diabetes caused her "constant leg numbness and pain," and she complained on numerous occasions that she was in "constant pain and unable to walk." (Doc. # 12, Pl's Br. at 13). The plaintiff's argument is a distortion of the medical records, and disingenuous at best. Skipper was diagnosed on January 23, 2002, with adult onset diabetes mellitus. (R. 182). She was prescribed medication and instructed to diet, lose weight and exercise. (*Id*.) On January 14, 2002, her weight had increased by 7 pounds but her blood sugar was improved. (R. 181). She reported eating well and feeling better. (*Id*.) On April 18, 2002, she had gained 3 pounds. Her diet was inconsistent and she was not walking. She did not complain about leg pain. (*Id*.) On May 9, 2002, Skipper had gained another 3 pounds and her blood sugar was elevated. She

---

179).

Although Skipper saw Dr. Wessner several times during 2003, she did not report any problem with her back. On January 21, 2004, Skipper complained of low back pain and pain in her left leg "at times" but she declined prescription medication. (R. 175). It was not until May 5, 2005, that Skipper complained again about her back. At that time, she told Dr. Wessner that she was 'unable to walk much due to chronic left sciatica." (R. 172).

[6] In her statement of the issue, Skipper refers to the ALJ's failure to find her heel spur a severe impairment. (Doc. # 12, Pl's Br. at 8). The burden is on the plaintiff to demonstrate that the Commissioner's decision is not supported by substantial evidence, and the argument of counsel is simply insufficient to meet this burden. *See generally Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (It is not the court's responsibility to seek out facts in support of the plaintiff's position.). Because Skipper makes no reference to heel spurs in her discussion, the court concludes that Skipper has abandoned this issue.

was directed to walk and lose weight. (R. 180). She did not complain of leg pain or an inability to walk. (*Id*.) On September 11, 2002, Skipper's weight was up 4 pounds and her blood sugar was elevated. Dr. Wessner noted that Skipper said she did not exercise because she was lazy. (R. 179). She did not voice any complaints about pain. (*Id*.)

On January 21, 2003, she presented to Dr. Wessner complaining of sinus congestion. She was out of her medications. She did not complain about leg pain. Dr. Wessner precribed medications and instructed her to lose weight, diet and exercise. (R. 178). Skipper did not complain to Dr. Wessner about leg pain until January 21, 2004, at which time she reported left leg pain "at times," in conjunction with her low back pain. (R. 175). Moreover, she declined a prescription for medication. (*Id*.) On June 15, 2004, Dr. Wessner noted that Skipper was inconsistent with her diet and exercise. (R. 174).

Although the medical records indicate that Skipper was diagnosed with diabetes in 2002, she has come forward with no evidence that her condition was disabling in 2003. In fact, the medical records demonstrate Skipper's noncompliance with regard to her diabetes. The record is replete with references to the plaintiff's failure to comply with her prescribed treatment of diet and exercise for her diabetes. Contrary to her assertion that she could not walk due to constant pain, the records reveal that Skipper chose not to exercise or watch her diet. Nonetheless, Skipper has failed to demonstrate that her diabetes was a severe impairment during, or prior to the expiration of, her insured status. While the medical records indicate that the plaintiff suffers from diabetes, the court concludes that Skipper has failed to meet her burden of establishing that the ALJ's decision regarding the severity of that

impairment during the insured period was not supported by substantial evidence.

**C. Subjective pain and credibility determinations.** Skipper contends that the ALJ "improperly rejected [her] testimony concerning the effects and resulting limitations imposed by the combination of her medically determinable impairments." (Doc. # 12, Pl's Br. at 14). As explained below, the ALJ did not fully credit Skipper's testimony. "Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987). The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) an objectively determined medical condition of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553. In this circuit, the law is clear. The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true

as a matter of law. This standard requires that the articulated reasons must be supported by substantial reasons. If there is no such support then the testimony must be accepted as true. *Hale*, 831 F.2d at 1012.

After reciting Skipper's testimony, and prior to reviewing the medical evidence, the ALJ acknowledged that Skipper has impairments that would reasonably be expected to produce the type of pain about which she complains but the ALJ then concluded that Skipper's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below." (R. 19). The ALJ then considered the medical evidence of record, and discredited Skipper's testimony as follows.

> Records from Dr. John Wessner show treatment for various ailments, including hypertension, sinusitis and low back pain. On January 14 2002, she reported that her low back pain had lessened. On January 23, 2002, the claimant reported walking a mile the day before and stated that she felt well. On February 25, 2002, she reported feeling well. Several visits were for sinus congestion. On January 21, 2003, the claimant was out of blood sugar and blood pressure pills. She was prescribed Allegra D, Zestril, Glucophage, Augmentin, micronase and another medication. She was also taking some over the counter medications. On January 12, 2004 she reported low back pain radiating into the left leg at times but declined a prescription (Exhibit 10F).
>
> The medical evidence as a whole does not indicate that the claimant's impairments are so significant as to preclude light work activity. Although she is credible as to having degenerative disc disease, there is no evidence that she has ulnar nerve dysfunction. Furthermore, records from Dr. Wessner indicated that at one point the claimant reported low back pain to the doctor who offered a prescription that she declined. On several visits the claimant reported that she felt well. There were no indications in the office visits during the period in question that the claimant was in significant pain or what limitations she had. A more recent pain questionnaire and residual functional capacity is not supported by Dr. Wessner's office notes during the relevant period of disability

12

considered herein. Additionally, the claimant led the undersigned to believe that she quit her job following an on-the-job injury if her back. However, the State agency reported that she stopped working to take care of a special needs child that she was adopting. Finally, the undersigned finds that the claimant's credibility as to disability is diminished because, after further questioning at the hearing, the claimant admitted that she did not retire from her job as a sewing machine operator but quit because she was adopting a sone who had special needs and to take care of him.

The Administrative Law Judge is convinced that the claimant is trying to present herself in a worse light than is actually the case. There is no supporting evidence in the file to indicate that the claimant's impairments were so severe to prevent light work activity during the relevant period of disability considered herein.

(R. 19-20)

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate *reasons* for doing so, or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones*, 941 F.2d at 1532 (articulated reasons must be based on substantial evidence). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'" *Foote*, 67 F.3d at 1562, *quoting Tieniber*, 720 F.2d at 1255 (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court). The ALJ has discretion to discredit a plaintiff's subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt,* 921 F.2d at 1223. Relying on the treatment records and objective evidence, the ALJ concluded that the plaintiff's underlying conditions are capable of giving rise to some pain

and other limitations, but not to the extent described by the plaintiff. Consequently, he discredited the plaintiff's testimony that she suffers from disabling, intractable pain. After a careful review of the record, the court concludes that the ALJ's reasons for discrediting the plaintiff's testimony were clearly articulated and supported by substantial evidence.

The medical records support the ALJ's conclusion that while Skipper has conditions that could reasonably be expected to produce pain, Skipper was not entirely credible in her description of that pain. For example, Skipper testified that she was not taking any prescription pain medication but she sometimes took over the counter medication such as Aleve. (R. 29). The medical records indicate that she declined prescription medication on several occasions. (R. 171 &175). She further testified that "[i]f my back flares up, I call [Dr. Wessner] automatically and he knows that problem, so we could either issue medicines over-the-counter or either come in for the epidural or whatever his plan is for that." (R. 30-31). The medical records do not support her testimony. The medical records indicate that Skipper had only two epidural steroid shots, on March 1, 1999 and January 15, 2002. (R. 154-55). On September 27, 2006, Skipper told Dr. Wessner that she had no need for epidural shots since she became a housewife. Finally, Skipper testified that she quit her because she was adopting a special needs child, not because of her pain or an on-the-job injury. (R. 37-38). Skipper's own testimony militates against her credibility. Thus, the court concludes that the Commissioner's decision to discredit Skipper's testimony is supported by substantial evidence.

To the extent that the plaintiff is arguing that the ALJ should have accepted her

testimony regarding her pain, as the court explained, the ALJ had good cause to discount her testimony. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled. Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate order will be entered.

Done this 16th day of December 2010.

          /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE